UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

ELIZABETH A. SANDERS,

    Plaintiff,

  v.                                                                CAUSE NO. 1:20-CV-147 DRL

ANDREW SAUL,
Commissioner of Social Security,

    Defendant.

## OPINION & ORDER

Elizabeth Sanders appeals the Social Security Administration's decision denying her application for supplemental security income under Title XVI of the Social Security Act. *See* 42 U.S.C. § 1381-1383f. Ms. Sanders requests reversal of the administrative law judge's decision or remand for further consideration. The court remands for further proceedings.

## BACKGROUND

Ms. Sanders applied for social security benefits on April 28, 2017, alleging disability beginning April 28, 2017 (R. 246). On behalf of SSA, the state disability determination service denied her application initially and upon reconsideration (R. 139-64, 167-75, 182-88). On December 11, 2018, an ALJ held a hearing where Ms. Sanders testified (R. 105-38). On February 7, 2019, the ALJ concluded that she wasn't disabled (R. 8-26). Mr. Sanders appealed, but the SSA Appeals Council denied her request for review (R. 1-7). She thereafter filed her complaint here under 42 U.S.C. § 405(g).

## STANDARD

The court may review the ALJ's decision under 42 U.S.C. § 405(g), but review is bound by a strict standard. Because the Council denied review, the court evaluates the ALJ's decision as the Commissioner's final word. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The ALJ's findings,

if supported by substantial evidence, are conclusive and nonreviewable. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is such evidence that "a reasonable mind might accept as adequate to support a conclusion," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), and may well be less than a preponderance of the evidence, *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). If the ALJ relied on reasonable evidence and built an "accurate and logical bridge between the evidence and her conclusion," the decision must stand. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). Even if "reasonable minds could differ" concerning the ALJ's decision, the court must affirm if the decision has adequate support. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

## DISCUSSION

When considering a claimant's eligibility for disability benefits, an ALJ must apply the standard five-step analysis: (1) is the claimant currently employed; (2) is the claimant's impairment or combination of impairments severe; (3) do her impairments meet or exceed any of the specific impairments listed that the Secretary acknowledges to be so severe as to be conclusively disabling; (4) if the impairment has not been listed by the Secretary as conclusively disabling, given the claimant's residual functional capacity, is the claimant unable to perform her former occupation; (5) is the claimant unable to perform any other work in the national economy given her age, education and work experience. 20 C.F.R. § 404.1520; *Elder v. Astrue*, 529 F.3d 408, 412 (7th Cir. 2008). The claimant bears the burden until step five, when it shifts to the Commissioner to prove that the claimant can perform other work in the economy. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Ms. Sanders satisfied step one because she hadn't engaged in substantial gainful activity since April 28, 2017, the application date (R. 13). She satisfied step two because she has severe impairments of osteoarthritis and obesity (R. 13). At step three, the ALJ found that Ms. Sanders didn't have a conclusively disabling impairment or combination of impairments (R. 15), so he formulated a residual

functional capacity or RFC that permitted her to do light work (R. 16). She satisfied step four because she is unable to perform past relevant work (R. 20). Based on the vocational expert's testimony and considering Ms. Sanders' age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that the claimant can perform, including charge account clerk (DOT 205.367-014), circuit board tester (DOT 726.684-110), and information clerk (DOT 237.367-046) (R. 21). The ALJ thus denied Ms. Sanders' request for benefits.

Ms. Sanders says the ALJ didn't properly craft her RFC by omitting certain impairments and their combined effect on her ability to perform work. The RFC is the maximum a claimant can still do despite her limitations. *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1)). It is based on medical evidence and testimony by the claimant or others. *Id.* at 676 (citing 20 C.F.R. § 404.1545(a)(3)). The ALJ must determine "which treating and examining doctors' opinions should receive weight and must explain the reasons for that finding." *Id.* (citing 20 C.F.R. §§ 404.1527(d), (f)). The ALJ must consider "all medically determinable impairments, physical and mental, even those that are not considered severe." *Id.* (citing 20 C.F.R. §§ 404.1545(a)(2), (b), (c)). An ALJ cannot simply disregard evidence; instead, the "ALJ must explain why he does not credit evidence that would support strongly a claim of disability, or why he concludes that such evidence is outweighed by other evidence." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 621 (7th Cir. 2010).

An ALJ's decision is erroneous if he doesn't build a logical bridge from the evidence to his conclusion. *Id.* at 618. Though he needn't "specifically address every piece of evidence," *id.*, he cannot "simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding," *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Two errors warrant remand here.

First, the ALJ erred in not accounting for Ms. Sanders' mental limitations in the RFC. He says he was persuaded by Russell Coulter-Kern's (Ph.D.) opinion that Ms. Sanders had mild difficulty

3

understanding, remembering, and carrying out instructions, mild difficulty maintaining attention and concentration, and mild difficulty coping appropriately to work pressures "persuasive" and "supported by the objective medical evidence of record," but curiously he includes no references to mental limitations in the RFC (R. 19). This was also true of Joelle Larsen, Ph.D., who determined Ms. Sanders had mild limitations in understanding, remembering, or applying information, and mild limitations in concentrating, persisting, or maintaining pace (R. 19). The ALJ said Ms. Sanders had mild limitations in three of the four mental functioning areas (R. 13-15), but again he didn't include any mental limitations in the RFC. This is error warranting remand. *See Denton*, 596 F.3d at 423 ("When determining a claimant's RFC, the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment."); *Simon-Leveque v. Colvin*, 229 F. Supp.3d 778, 787 (N.D. Ill. 2017) ("While a mild, or even a moderate, limitation in an area of mental functioning does not *necessarily* prevent an individual from securing gainful employment . . . the ALJ must still affirmatively *evaluate* the effect such mild limitations have on the claimant's RFC.") (emphasis original); *Dross-Swart v. Astrue*, 872 F. Supp.2d 780, 795 (N.D. Ind. 2012) (Rodovich, J.) ("Although not severe, the mild limitations . . . should have been incorporated into the ALJ's RFC analysis.").

Second, though the ALJ might be right that "[t]here is no evidence of any further treatment" for her foot (R. 18), he didn't fully develop the record here. Ms. Sanders testified that she was "going to have to have surgery [on her foot] again" (R. 121). The Commissioner says this statement is vague and doesn't specify that she was going to have surgery on the foot again; but even if he is right, this doesn't save the ALJ's decision. Social security proceedings are inquisitorial, not adversarial, *see* 20 C.F.R. § 416.1400(b), so "[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000). The ALJ should have inquired further into this statement, which necessarily would bear on his conclusion that "[t]here is no

evidence of any further treatment" (R. 18). *See Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004) ("An ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable.").

This is particularly true when Ms. Sanders' surgeon voiced concerns that the bones in her foot had not healed correctly in March 2018 (R. 583), and that by August 2018 Ms. Sanders continued reporting the same symptoms (R. 605). The same doctor also said Ms. Sanders' bone was only partially healed (R. 607, 610, 615). No logical bridge was built here. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

The court considered Ms. Sanders' arguments that the ALJ didn't adequately address her knee pain or need for a cane. That said, the court's role in evaluating the ALJ's decision is "extremely limited," and the court won't "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder*, 529 F.3d at 413. The question is only whether the ALJ's decision is supported by substantial evidence and whether the ALJ built an "accurate and logical bridge" from the evidence to his conclusion. *Craft*, 539 F.3d at 673. The ALJ did so on these fronts.

The ALJ addressed both the good and bad evidence for his conclusions here. He considered Ms. Sanders' own testimony that she had knee pain and her reported use of a cane since November 2016 (R. 17). He considered Ms. Sanders' daughter's testimony that her mother had trouble walking (R. 17). He considered the objective medical evidence, including her use of a cane at times (R. 18). He considered Ms. Sanders' use of a wheelchair (R. 16). He acknowledged that Ms. Sanders presented herself with a cane at various appointments (R. 17-18).

But not all evidence points toward limitations beyond those listed in the RFC because of knee pain and cane use. Indeed, the ALJ found that Ms. Sanders had mild to moderate degenerative joint disease in her right knee (R. 18). He noted that though Ms. Sanders ambulated slowly, it was due to

5

morbid obesity, and that her gait was otherwise normal at a consultative exam (R. 18). At the exam, she was able to get on and off the exam table without difficulty (R. 18). Though she had some decreased range of motion of the knees, she didn't have any swelling, erythema, or tenderness in the knee (R. 18). He noted the record was lean on any medical necessity for a cane outside of the times when she was experiencing knee pain and noted that she didn't need a cane while meeting with consultative examiner Dr. Laurente (R. 18). Ms. Sanders says the ALJ incorrectly concluded she had no ongoing complaints of treatment for knee pain (*see* R. 18), but her record cites point to foot, not knee, pain (*see, e.g.*, R. 121, 356). In fact, she admitted her leg swelling was "pretty much under control" at the hearing (R. 121).

In short, there is conflicting evidence in the record regarding her knee pain and need for a cane. The ALJ considered the evidence, both good and bad, and formed an RFC that had limitations for light work (R. 16). The court won't now reconsider the evidence. *See Simila*, 573 F.3d at 513. Though there may be some evidence he didn't explicitly mention, the ALJ isn't "required to address every piece of evidence or testimony presented." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). The ALJ did all that was required by considering the evidence and building a logical bridge from the evidence to his conclusion on this matter. *See Simila*, 573 F.3d at 513.

Though non-dispositive, the court doesn't credit Ms. Sanders' remaining arguments. She says the ALJ erred evaluating her obesity, but the ALJ noted her obesity throughout his opinion. He found Dr. Ruiz's opinion persuasive, who considered Ms. Sanders' obesity in accordance with other limitations and determined Ms. Sanders could do light work (R. 19). Dr. Ruiz formed his opinion after reviewing most of the medical evidence and cited to specific objective findings supporting his opinion (R. 19, 162). The ALJ found that evidence at the hearing didn't show any worsening of her conditions (R. 19). His conclusion was also supported by Dr. Laurente, who opined that Ms. Sanders should avoid heavy lifting but didn't provide any additional limitations (R. 19).

Ms. Sanders says the ALJ erred in finding she didn't have a disadvantageous educational level because she completed her GED. Without citing any authority, she says there is no evidence a GED credential earned in the 1980s would benefit her today. But there is also no evidence a GED obtained in the 1980s wouldn't benefit her today. She is better off educationally than she would be without a GED.[1]

She says the ALJ erred by not considering her work absences from surgery and appointments. The ALJ didn't need to credit her absenteeism evidence, though, as it isn't particularly probative of the number of absences she will use going forward, and she doesn't indicate that she has to schedule her future medical appointments during work hours. *See, e.g., Cherkaoui v. Comm'r of Soc. Sec.*, 678 F. Appx. 902, 904 (11th Cir. 2017) ("we are unpersuaded by [plaintiff's] argument that the excessive number of medical appointments she attended rendered her disabled"); *Barnett v. Apfel*, 231 F.3d 687, 691 (10th Cir. 2000) ("the ALJ did not err by failing to consider plaintiff's absenteeism").

That said, the ALJ didn't build a logical bridge from the evidence to his conclusion because of the errors in addressing Ms. Sanders' physical and mental impairments, and this prevents meaningful review. *See Young*, 362 F.3d at 1002. Accordingly, the court remands the case for further proceedings before the ALJ. An award of benefits isn't appropriate because there is conflicting medical evidence in the record, and the court cannot say conclusively that benefits should be awarded. *See Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). The ALJ's finding may well be the same, but the evidence must be considered in reaching a conclusion here.

---

[1] Ms. Sanders also argues that the ALJ didn't consider the adverse effects of a ruling against her from a practical standpoint considering his ruling came only two months before her 50th birthday. *See* 20 C.F.R. § 416.963(b) ("If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case."). The court doesn't address this argument because it isn't dispositive and it isn't clear how the evidence will be weighed upon remand. It also seems her argument that she was unable to file a new application for Title XVI benefits until after January 27, 2020 was flawed because the notice explained to her that she had the right to file a new application at any time and file a civil action seeking judicial review of the ALJ's decision (R. 2).

7

CONCLUSION

The court GRANTS Ms. Sanders' motion for remand (ECF 14) and REMANDS her case for further proceedings before the ALJ. This order terminates the case.

SO ORDERED.

April 19, 2021  *s/ Damon R. Leichty*
　　　　　　　　　　　　　　　　　　　Judge, United States District Court